Robert M. Cook (SBN 002628)
THE LAW OFFICES OF ROBERT M. COOK, PLLC
219 West Second Street
Yuma AZ 85364
Telephone: (928) 782-7771
Facsimile: (928) 782-7778
E-mail: robertmcook@yahoo.com
**Attorney for Debtors**

**UNITED STATES BANKRUPTCY COURT
FOR THE STATE OF ARIZONA**

| | |
|---|---|
| In re<br>STEVIE L. STEELMAN, SR. and<br>CHERYL STEELMAN,<br><br>Debtors. | Chapter 12<br><br>Case No. 4:09-bk-33965-JMM |

**CHAPTER 12 (OPERATING)
PLAN OF REORGANIZATION**

The Debtors propose this Plan of Reorganization pursuant to Chapter 12 of Title 11, United States Code.

Pursuant to 11 U.S.C. §1201(a), all actions are stayed against the co-debtors of Stevie L. Steelman, Sr. and Cheryl Steelman in the Chapter 12 cases.

In accordance with 11 U.S.C. §1222, Family Farmer Plans of Reorganization provides as follows:

> "(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the Plan;
>
> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 unless-
>
>> (A) the claim is a claim owed to a governmental unit that arises as a result of the sale, transfer, exchange or other

disposition of any farm asset used in the debtor's farming operation, in which case the claim shall be treated as an unsecured claim that is not entitled to priority under section 507, bu the debt shall be treated in such manner only if the debtor receives a discharge; or

(B) the holder of a particular claim agrees to a different treatment of that claim;

(3) if the plan classifies claims and interests, provide the same treatment for each claim or interest within a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment; and

(4) notwithstanding any other provision of this section, a plan may provide for less than full payment of all amounts owed for a claim entitled to priority under section 507(a)(1)(B) only if the plan provides that all of the debtor's projected disposable income for a 5-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan."

## DEFINITIONS

In this plan the following terms have these meanings:

1. "Confirmation" shall mean the entry by this Court of an Order confirming this Plan in accordance with Chapter 12;

2. "Effective Date" shall mean that date on which the Order confirming the Plan becomes final and nonappealable.

3. "Interest" shall mean simple interest calculated on a 365 day year. Interest shall run from the date of confirmation, accrued to date of debtors' first plan payments, and then added to the principal of the claim to be paid under the plan.

## ARTICLE I
## Classification of Claims and Interests.

Pursuant to U.S.C. §1222(a), the Plan divides the holders of claims into these classes:

1.1 <u>Class One</u>: Administrative expenses as the same shall be allowed and approved by the Court, including fees of Debtors' counsel.

A. Robert M. Cook, Attorney for Debtors was paid in full pre-petition.

B. The Trustee shall be paid 5% of Plan payments.

C. The IRS will be paid within 5 years. The IRS has filed a Proof of Claim against Debtors Stevie L. Steelman, Jr. and Maryann Steelman in the amount if $14,875.25 in which $9,869.71 is priority and $5,005.54 is unsecured.

1.2 <u>Class Two</u>: Secured Claims are compromised of:

1. The portion of the claim that real estate secures:

A. Nation Star Mortgage shall retain its security interest in Stevie L. Steelman, Sr. and Cheryl Steelman's residence located at 808 East Shadow Lane, Casa Grande, AZ 85122 and shall be paid $100,000.00 over 30 years at 5% fixed interest. Nation Star Mortgage shall be paid direct to the Creditor outside of the Plan.

B. The Bank of New York Mellon Trust Co. c/o GMAC Mortgage shall retain its security interest in Stevie L. Steelman, Sr. and Cheryl Steelman's rental residence located at 332 West Pima in Coolidge, Arizona and shall be paid as agreed. The Bank of New York Mellon Trust Co. c/o GMAC Mortgage shall be paid direct to the Creditor outside of the Plan.

C. The Pinal County Treasurer is owed approximately $1,171.88 for property taxes on the property located at 332 West Pima in Coolidge, Arizona. Debtors pay the property taxes through their escrow account with the mortgage company. Debtors believe these taxes are paid and current.

2. The portion of the claim that personal property secures:

A. Ford Motor Credit Company shall be paid nothing under this Plan as the Debtors have surrendered the 2008 Ford F250 vehicle back to the Secured Creditor.

B. Great Western Bank shall be paid nothing under this Plan. At the time of filing, Debtors had a balance owed of approximately $3,108.31 on the secured motor home. Debtors have continued the monthly payments and the lien has been paid off.

3. The portion of the claim that farm personal property secures:

A. Debtor may have contingent claims, that to the Debtor are unsecured claims. All Secured and Unsecured Creditors of the Debtor's farming entities have been treated in their subject Confirmed Chapter 12 Plan. (ie. John Deere &

Co., AgriCredit, Naeda Finance Ltd., TCF Equipment Finance , Trimble Financial Services, Chase, etc.) Any unsecured amounts shall be paid in the unsecured claims category. Debtor agrees to the terms and conditions of their entities' Confirmed Chapter 12 Plans. They shall be bound by the Order Confirming and they are in financial support of the Plan.

1.3 <u>Class Three</u>: Unsecured claims.

A. Unsecured Claims shall be paid 2% of their said claim over the life of the Plan. Any Contingent Claims of the Debtors owed by their entities Custom Tillage, LLC, S & S Farms Partnership and Steelman Enterprises, LLC have been satisfied in the Confirmed Chapter 12 Plan for those Debtors. Below are the individual Debtors Unsecured Claims.

| <u>Home Depot</u> | <u>$448.53</u> |
|---|---|
| TOTAL | $448.53 |

## ARTICLE II
## Treatment of Claims.

2.1 Class One: The Class One claim will be paid in full prior to payments on Class Three claims. The payment provided for Class Three claims will be devoted to payment of the Class One claims until those claims are paid in full; thereafter the payment will be devoted to payment of the Class Three claims.

2.2 Classes Two and Three: Claims in these classes will be paid pursuant to the terms set forth in the debt service table below, as modified by the paragraph immediately before this paragraph.

A. Trustee payments will be each month commencing May 1, 2011 as it is anticipated that the Chapter 12 Plan will be confirmed by that time. The life of the Plan will be 60 months and unless noted different in the creditors treatment, there shall be 60 total payments.

/ / /

**DEBT SERVICE TABLE, May 1, 2011 through plan end (monthly)**

| Class | Claim | Amort. Period | Interest Rate | Monthly Payment |
|---|---|---|---|---|
| 1: Administrative | | | | |
|    IRS | $ 9,869.71 | 5 | 0% | $ 164.50 |
| 2.a. Bank (R.E.) | | | | |
|    NONE | | | | |
| 3. Unsecured (2%) | $ 8.97 | 5 | 0% | $ 0.15 |
| (Total Unsecured Claims $448.53) | | | | |
| | | | Trustee | $ 8.23 |
| | | | Subtotal: | $ 172.88 |

## ARTICLE III
## Means for Execution.

3.1 The Debtors shall pay to the standing trustee monthly, the sum set by the office of the United States Trustee as the standing trustee's fee arising by virtue of payments on claims, commencing May 1, 2011.

    A. From May 1, 2011, for a period of 60 months, the payment shall be total amount shown in the Debt Service Table above, adjusted for differences in the amounts of approved claims.

3.2 Regardless of any other provision of the Plan, the standing trustee shall make payments only to creditors holding timely filed and allowed claims.

3.3 Confirmation of this plan constitutes authorization to the Farm Service Administration to provide full FSA services to the Debtors consistent with the terms of this plan and constitutes limited relief from the stay of 11 U.S.C. §362 for that purpose.

3.4 After confirmation of the plan, all checks jointly payable to the Debtors and any creditor shall be endorsed by the creditor for the Debtors' use, provided that the Debtors are in full compliance with the requirements of this plan, the Bankruptcy Code, and the rules of the Bankruptcy Court.

   3.5 <u>Post-Confirmation Status of Liens:</u>

    A. The Class Two creditors shall retain their liens following confirmation. Debtors shall comply with insurance and financial reporting requirements contained in pre-petition agreements with secured lenders.

3.6 All post-confirmation payments made under the Plan will be made to the standing trustee in the form of check or money order showing the bankruptcy case number. Payment to the standing trustee shall constitute payment to creditors for the purpose of calculating any interest charge.

3.7 Debtors shall provide the standing trustee: (1) quarterly cash flow statements and annual financial statements within 30 days after the end of each plan Quarter: (2) annual financial statements within 30 days after the end of each plan year: (3) a copy of timely filed federal income tax returns at the time of filing such returns: (4) upon demand, any other records which should be kept in the ordinary course of Debtors' business. The Trustee shall have the right at any time to require the Debtors to retain the services of a professional farm records specialist for the purpose of making the Debtors' required reports more accurate.

3.8 Amounts specified elsewhere in this plan to be paid on claims notwithstanding, any payment on a claim or class of claims shall be adjusted to amortize such claim (or the total claims in the class) over the period specified with the indicated interest, once the amount of the claim has been determined and allowed by the court. Debtors shall forthwith notify the standing trustee of any change in such payments.

3.9 **Claims not filed before the bar date established in the Court's Notice of Chapter 12 Bankruptcy Case shall be barred.**

3.10 The Order of Confirmation herein will constitute authorization to the Debtors to borrow funds in the ordinary course of business for the conduct of their farming operations, including planting, propagating and harvesting crops, and granting security to lenders as required for that purpose.

3.11 <u>Executory Contracts</u>: Debtors hereby assume all executory contracts not specifically rejected in this plan. Debtors hold no personal leases in this case but Debtors agree to the Lease terms for the related entities Custom Tillage & Spray, LLC, S & S Farms Partnership and Steelman Enterprises, LLC that have been confirmed in their Chapter 12 Plans.

**ARTICLE IV**
**Feasibility and Liquidation**

4.1 The Debtors will be able to make all payments and comply with all provisions of the plan based upon the availability to the Debtors of the income and property proposed to be used under the plan. The Debtors have no reason to believe that any income described herein, or any asset described herein, will not be available to the Debtors.

    A. Debtors continue to farm under their entities (Custom Tillage & Spray, LLC, S & S Farms Partnership and Steelman Enterprises, LLC) that have a confirmed Joint Chapter 12 Plan.

4.2 Liquidation of the Debtors' enterprise would probably result in full payment to all creditors. Debtors project the income and expense set forth in the Direct Loan Assistance application to obtain FSA financing that was filed with the Court under the entity (Steelman Enterprises, LLC, Case No. 4:09-bk-33960-JMM, Docket No. 122). The anticipated income grows each year with the value of crops going up.

## ARTICLE V
## General

5.1 This plan complies with the provisions of Chapter 12 and all other applicable provisions of Title 11 of the United States Code, and is proposed in good faith and not by any means forbidden by law.

5.2 The Trustee shall deduct, from payments received, the fee set by the United States Trustee's Office.

5.3 Confirmation of the Plan shall vest in the Trustee the right, without regard to prior proceedings prosecuted or defended by Debtors, to (1) object to claims, and (2) continue or bring actions under 11 U.S.C. §§544, 545, 547, 548 or 553. Payments provided herein for claims which are not allowed or are disallowed, and any avoidance recovery, shall be distributed to holders of priority and unsecured claims as provided under this plan.

## ARTICLE VI
## Duration of Plan.

6.1 This plan shall terminate on April 1, 2016, except as to claims for which this plan makes provision for payments due after that date.

## ARTICLE VII
## Jurisdiction of the Court.

7.1 The Court will retain jurisdiction until this plan has been fully consummated, including jurisdiction for the following purposes:

    A.    Determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtors and any other party.

    B.    The correction of any defect, curing of any omission, or reconciliation of any inconsistency in this plan, or the order of confirmation as may be necessary to carry out the purposes and intent of this plan.

C. The modification of this plan after confirmation.

D. To enforce and interpret the terms and conditions of this plan.

E. Entry of any order necessary to enforce the title, rights and powers of the Debtors, and to impose such limitations, restrictions, terms and conditions as this Court may deem necessary.

RESPECTFULLY SUBMITTED this 18th day of March, 2011.

                                      THE LAW OFFICES OF ROBERT M. COOK, PLLC

                                      By: /s/ Robert M. Cook
                                              Robert M. Cook, Esq.
                                              Attorney for Debtors

Approved by:
/s/ Stevie L. Steelman, Sr
/s/ Cheryl Steelman